UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
ANDREW GOLDBERG, invidividually and on
behalf of all others similarly situated, as a class,

                              Plaintiffs,

       -v-                              5:15-CV-0538
                                              (DNH/TWD)

GREGORY W. GRAY, JR., GREGORY P.
EDWARDS; ARCHIPEL CAPITAL LLC; BIM
MANAGEMENT LP; BENNINGTON INVESTMENT
MANAGEMENT, INC.; NIXON PEABODY, LLP,
JOHN KOEPPEL ESQ.; and against all in a
representative and fiduciary capacity for as acting
GENERAL PARTNERS; and CONTROL MEMBERS
of BENNINGTON-EVERLOOP LP; ARCHIPEL
CAPITAL-AGRIVIDA LLC; ARCHIPEL CAPITAL
-BLOOM ENERGY LP; ARCHIPEL CAPITAL-LATE
STAGE FUND LP; ARCHIPEL CAPITAL-LINEAGEN
LP; ARCHIPEL CAPITAL-SOCIAL MEDIA FUND LP,
(1, 2, 3 & 4) and against each said funds Individually
as Limited Partnership Enterprises and as Attorneys and
Publishers of all Private Placement Memorandums in
connection with each/any/or all of the above entities; and
Jane Does and Mary Roes (#1-10),

                              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                         OF COUNSEL:

CHERUNDOLO LAW FIRM, PLLC        JOHN C. CHERUNDOLO, ESQ.
Attorneys for Plaintiffs
AXA Tower One, 17th Floor
100 Madison Street
Syracuse, NY 13202

GREGORY W. GRAY JR.
Pro se
514 Main Street
Buffalo, NY 14202

BALLARD, SPAHR LAW FIRM  
Attorneys for Defendants Gregory P. Edwards &  
Bennington Investment Management, Inc.  
919 Third Avenue  
New York, NY 10022

MICHAEL J. GRUDBERG, ESQ.

WOLFORD LAW FIRM, LLP  
Attorneys for Defendants Nixon Peabody, LLP  
16 E. Main Street  
600 Reynolds Arcade Building  
Rochester, NY 14614

MICHAEL R. WOLFORD, ESQ.  
MARY E. SHEPARD, ESQ.

WARD GREENBERG HELLER & REIDY LLP  
Attorneys for Defendent John Koeppel, Esq.  
1800 Bausch & Lomb Place  
Rochester, NY 14604

ERIC J. WARD, ESQ.  
JESSICA N. CLEMENTE, ESQ.

MCCONVILLE, CONSIDINE LAW FIRM  
Attorneys for Intervenor Defendant Lucien A.  
Morin, II  
25 E. Main Street, Suite 500  
Rochester, NY 14614

WILLIAM E. BRUECKNER, III

DAVID N. HURD  
United States District Judge

## MEMORANDUM, DECISION and ORDER

## TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

II. FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III. LEGAL STANDARDS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      A. Failure to State a Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      B. Pleading Securities Fraud. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      C. Leave to Amend . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IV. DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

      A. Claim 1 - Section 10(b) Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            1. Nixon Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

i. Material Mistatements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

ii. Scheme to Defraud . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

2. Bennington Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

B. Claim 2 - Section 20 Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

C. Claim 3 - RICO Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

D. Claim 4 - Fraud . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

1. Nixon Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

2. Bennington Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

E. Claim 5 - Negligent Misrepresentation . . . . . . . . . . . . . . . . . . . . . . . . . . .19

1. Nixon Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

2. Bennington Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

F. Claim 6 - Breach of Fiduciary Duty . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

1. Nixon Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

2. Bennington Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

G. Claim 7 - Conversion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

1. Nixon Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

2. Bennington Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

H. Claim 8 - Legal Malpractice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

I. Claim 9 - Unjust Enrichment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

1. Nixon Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

2. Bennington Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

J. Claims 10-13 - New York State Debtor and Creditor Law §§ 273 -276 . . . . . . . 28

1. Nixon Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29

2. Bennington Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

K. Cross Motion to Amend . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . .30

L. Receiver's Motion to Stay . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .31

IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

## I. <u>INTRODUCTION</u>

Plaintiff Andrew Golberg ("<u>Goldberg</u>") commenced this class action against the defendants alleging (i) violation of § 10(b) of the Securities Exchange Act (the "Exchange Act"), 25 U.S.C. § 78j(b) ("Section 10(b)") and Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5 ("Rule 10b-5"), (iii) violation of § 20 of the Exchange Act, 25 U.S.C. § 78t ("Section 20"), (iii) violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1962 ("RICO") and (iv) numerous state law claims including fraud, negligent misrepresentation, breach of fiduciary duty, conversion, legal malpractice, unjust enrichment and violation of New York Debtor & Creditor Law §§ 273-276 concerning fraudulent conveyances. At the heart of his complaint, plaintiff alleges that defendant Gregory Gray and the other defendants engaged in ongoing fraudulent conduct designed to defraud investors and that Gray operated a classic Ponzi-like scheme.

Presently under consideration are: (1) a motion to dismiss for failure to state a cause of action by defendants Nixon Peabody, LLP ("Nixon Peabody") and John Koeppel, Esq. ("Koeppel", and together with Nixon Peabody, the "Nixon Defendants") (ECF No. 60), (2) a motion to dismiss for failure to state a cause of action by defendants Gregory P. Edwards ("Edwards") and Bennington Investment Management, Inc. ("Bennington Management", and together with Edwards, the "Bennington Defendants") (ECF No. 61), (3) plaintiff's motion to amend his complaint (ECF No. 69) and (4) a motion to stay action by defendant intervenor

Lucian A. Morin, II (the "Receiver") (ECF No. 34).  All motions were fully briefed and oral argument was hearD in Utica, New York.  Decision was reserved.

## II.  **FACTUAL BACKGROUND**

In his Amended Class Action Complaint, dated December 9, 2015 (the "Complaint"), Goldberg contends that from 2011 to 2015, defendant Gregory W. Gray, Jr. ("Gray") and Edwards raised approximately $19.6 million in investments from at least 140 individuals and investors through 11 investment limited liability companies and limited partnerships listed in the complaint (the "Archipel Entities")[1].  See Complaint, ECF No. 53, at ¶ 33.  Plaintiff's complaint alleges that the individual defendants, including investment professionals and their attorneys, made material misrepresentations when marketing the investments to the plaintiffs and during the course of the investment relationship, including misleading investors concerning business partnerships, product development, the number of product users and major co-investors, specifically with regards to an investment in Everloop, Inc., a business engaged in social media platforms for youth.

The amended complaint alleges that in December 2008, Gray was disciplined by the New York Stock Exchange as a result of misusing customer monies and physically threatening a customer and was barred for three years from association with NYSE member firms.  See Complaint, ECF No. 53, at ¶¶ 17, 49.  Plaintiff alleges that the defendants failed to disclose, either in the Private Placement Memorandums ("PPMs") of the Archipel Entities or otherwise, Gray's disciplinary history.  Id. at ¶ 50.  Goldberg alleges that Koeppel, a partner at Nixon Peabody who represented the Archipel Entities and prepared and distributed the PPMs, was aware of Gray's disciplinary history before May 2011.  See Complaint, at ¶ 4, 51.  Further,

---

[1] Although 11 investment vehicles are listed in the Complaint, it appears that only Archipel Capital LLC, BIM Management, Inc. and Bennington Investment Management, Inc. have been served.

Goldberg asserts that the materials submitted to prospective investors identified Gray as "a registered investment advisor for NASD Licenses: series 6, 7, 63, 64", which was false. Id. at ¶ 50.

The amended complaint alleges that the defendants induced plaintiffs to invest millions of dollars in a company called Everloop, Inc. ("Everloop"), which sought to develop a safe and private social media platform for "tween" children. See Complaint, at ¶ 39. Goldberg alleges that Gray, Edwards and the Archipel Entities (the "Archipel Defendants") provided an Executive Summary concerning possible investment in Everloop, which falsely indicated that Everloop had obtained a federal Real Time Learning Grant for $25,000,000 and a National Science Foundation Grant of $2,000,000. Id. at ¶ 42. Further, the Archipel Defendants announced that Everloop was launching a learning channel network with I-Safe Inc., a large literacy education publisher, as part of a strategic partnership. Id. at ¶ 43.

Goldberg contends that even after investment, Gray made additional misrepresentations, including the announcement of a text messaging product called EverText in 2011, which plaintiff contends never existed. Id. at 57. Additionally, Goldberg asserts that the Archipel Defendants misrepresented possible investment in Everloop by other prominent investors. Id. at ¶ 65. Gray also allegedly misrepresented the financial condition of Everloop between 2011 and 2013, including its indebtedness and cash flow, and the number of registered members of Everloop. 72. In 2012, Goldberg also asserts that Gray represented that Everloop was in advanced stage meetings with Major League Baseball and the National Football League for use of Everloop products. Id. at 78.

The amended complaint alleges that in 2013, Everloop intended to enter into a licensing agreement with another company, B2BSocial, that would grant B2BSocial a perpetual

license in Everloop software.  Id. at 91.  The Archipel Entity investing in Everloop, Bennington-Everloop LP ("BELP"), objected to such agreement and a settlement was reached between Everloop and BELP.  Goldberg asserts that the settlement amount was $650,000, but that Gray utilized $350,000 of the settlement money for another Archipel Entity.  The amended complaint also alleges that Nixon Peabody received approximately $350,000 as a result of the settlement and did not provide BELP investors an accounting of the proceeds of the settlement when requested.  Id. at 97.  The complaint also alleges that Nixon Peabody established multiple investment facilities so that individuals at the law firm could invest in the Archipel Entities.  Id. at 95.

The amended complaint also details actions by defendant Gray utilizing funds for certain investment vehicles to provide anticipated returns to other investment vehicles and falsifying documents to cover the commingling of funds, which largely mirror the SEC action against Gray.  Goldberg asserts that defendant Edwards failed to stop or control Gray's actions, even though Gray was in constant contact with Edwards and was aware of certain shortfalls. Id. at 130.  Similarly, Goldberg alleges that Nixon Peabody failed to investigate Gray's action when complaints eventually arose from investors and threatened such investors with litigation. Id. at 132.

On February 27, 2015, the Security and Exchange Commission commenced an action against defendant Gray and the Archipel Entities in the Southern District of New York, enjoining further activity of the Archipel Entities and seeking damages from defendant Gray (the "SEC Action").  Neither Gregory Edwards, Bennington Investment Management, Inc., Nixon Peabody, LLP nor John Koeppel are named as defendants in the SEC Action.  Pursuant to a court order in the SEC Action, Lucien Morin (the "Receiver") was appointed the receiver to preserve the

status quo with respect to the assets contained in the Archipel Entities. Gray has pled guilty to securities fraud in violation of Section 10(b) of the Exchange Act and Rule 10b-5 and is scheduled to be sentenced on September 14, 2016.

## III. LEGAL STANDARDS

### (A) *Failure to State a Claim*.

To survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), more than mere conclusions are required. Indeed, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

Dismissal is appropriate only where the plaintiff has failed to provide some basis for the allegations that support the elements of her claims. See Twombly, 550 U.S. at 570 (requiring "only enough facts to state a claim to relief that is plausible on its face"). When considering a motion to dismiss, the pleading is to be construed liberally, all factual allegations are deemed to be true, and all reasonable inferences must be drawn in the plaintiff's favor. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

### (B) *Pleading Securities Fraud*.

"Securities fraud claims are subject to heightened pleading requirements that the plaintiff must meet to survive a motion to dismiss." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007); see also Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 321-23 (2007). A complaint alleging securities fraud must meet the pleading requirements of Rule 9(b), which requires plaintiffs to "state with particularity the circumstances constituting

fraud or mistake." Fed. R. Civ. P. 9(b); see also ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co., 553 F.3d 187, 196 (2d Cir. 2009). "Allegations that are conclusory or unsupported by factual assertions are insufficient." ATSI, 493 F.3d at 99.

A complaint alleging securities fraud must also meet the pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b). Under the PSLRA, a plaintiff must "specify each statement [or omission] alleged to have been misleading [and] the reason or reasons why the statement is misleading" and "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" with respect to each act or omission. 15 U.S.C. § 78u—4. "For an inference of scienter to be strong, 'a reasonable person [must] deem [it] cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" ATSI, 493 F.3d at 99 (quoting Tellabs, 551 U.S. at 324) (alteration in original).

*(C) Leave to Amend.*

Leave to amend a complaint should be freely given "when justice so requires." FED. R. CIV. P. 15(a)(2). It is "within the sound discretion of the district court to grant or deny leave to amend." McCarthy v. Dun & Bradstreet, 482 F.3d 184, 200 (2d Cir. 2007). "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008). "The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993). "Amendment may be prejudicial when, among other things, it would require the

opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute." AEP Energy Services Gas Holding Co. v. Bank of America, N.A., 626 F.3d 699, 725 (2d Cir. 2010).

## IV. DISCUSSION

### *(A) Claim 1 - Section 10(b) Claims.*

Goldberg asserts that the defendants violated Section 10(b) of the Exchange Act, which makes it unlawful "for any person, directly or indirectly, ... [t]o use or employ, in connection with the purchase or sale of any security ..., any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe." 15 U.S.C. § 78j(b). In order for properly plead a securities fraud claim under Section 10(b), a plaintiff must allege: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentations or omissions and the purchase and sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss and (6) loss causation. See Matrix Initiative, Inc. v. Siracusano, 563 U.S. 27, 35 (2011); Carpenters Pension Trust Fund of St. Louis v. Barclays, PLC, 750 F.3d 227, 232 (2d Cir. 2014).

A plaintiff must make a threshold showing that the material misrepresentation was made by the defendant. See 17 C.F.R. § 240.10b–5 ("It shall be unlawful for any person, directly or indirectly ... [t]o make any untrue statement of a material fact or to omit to state a material fact necessary ...."); Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 2398, 2407 ( "Section 10(b) of the Securities Exchange Act of 1934 and the Securities and Exchange Commission's Rule 10b–5 prohibit making any material misstatement or omission in connection with the purchase or sale of any security."). "For purposes of Rule 10b–5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how

to communicate it. Without control, a person or entity can merely suggest what to say, not 'make' a statement in its own right." Janus Capital Grp., Inc. v. First Derivative Traders, 564 U.S. 135, 180 (2011).

Lastly, to establish loss causation "a plaintiff must allege . . . that the subject of the fraudulent statement or omission was the cause of the actual loss suffered." Lentell v. Merrill Lynch & Co., Inc., 396 F.3d 161, 173 (2d Cir. 2005). The Nixon Defendants argue that it was defendant Gray's illegal conduct in commingling and misappropriating fund assets, and not their alleged failure to disclose Gray's disciplinary history, which caused plaintiff's loss. The Nixon Defendants further argue that as Gray's disciplinary history was publicly available, plaintiff cannot claim reasonable reliance on any omission of such history by the Nixon Defendants.

Rule 10b-5 provides that it is unlawful for any person, directly or indirectly, to: (a) employ a device, scheme, or artifice to defraud; (b) make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstance under which they were made, not misleading; or (c) engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security. See 17 C.F.R. § 240.10b-5.

1. *Nixon Defendants*.

In their motion to dismiss, the Nixon Defendants contend that the amended complaint is devoid of facts that could support Goldberg's claim that Nixon or Koeppel made a material misrepresentation or knowingly participated in any scheme to defraud investors in the Archipel Entities.

In the amended complaint, Goldberg alleges that the Nixon Defendants served as the legal advisor for several, if not all, of the private placement memoranda ("PPMs") distributed for

the Archipel Entities and failed to include defendant Gray's disciplinary history and falsely stated that Gray was a "registered investment advisor for NASD Licenses: series 6, 7, 63, 64".  Further, plaintiff contends that the Nixon Defendants represented one of the Archipel Entities, with regards to a dispute which resulted in a settlement of approximately $650,000 being received by an Archipel Entity, and that the Nixon Defendants threatened investors who inquired about the settlement and refused to provide a complete accounting.  Plaintiff alleges that the Nixon Defendants made a fee upwards of $350,000 from such settlement.  Plaintiff also states its believe that the Nixon Defendants established its own investment vehicle whereby employees could invest in Archipel Entities, creating a conflict of interest.  Plaintiff contends that the Nixon Defendants were responsible for receiving money from investors and on one occasion delivered a confirmation stating that an acquisition of shares of Twitter had occurred which plaintiff asserts was false.  Lastly, Goldberg contends that Koeppel "vouched" for the legitimacy of Gray and Edwards' investment entities.  See Complaint, at ¶ 171.

Reviewing the amended complaint, it is clear that the primary actor concerning the ongoing ponzi scheme was defendant Gray.  The question the Court is faced with concerning all almost all of Goldberg's claims is whether plaintiff has pled sufficient specific allegations concerning the conduct of the Nixon Defendants and the Bennington Defendants.  In this regard, plaintiff does not assist the Court as much of the amended complaint alleges items on a group basis simply under the banner of "defendants".

(i) *Material Misstatements*.  The Second Circuit has found that "'a defendant must actually make a false or misleading statement in order to be held liable under Section 10(b).  Anything short of such conduct is merely aiding and abetting, and no matter how substantial that aid may be, it is not enough to trigger liability under Section 10(b).'" Pacific Inv. Management Co.

LLC v. Mayer Brown LLP, 603 F.3d 144, 153 (2d Cir. 2010) (quoting Shapiro v. Cantor, 123 F.3d 717, 720 (2d Cir. 1997). As a result, "a plaintiff's claim against a secondary actor must be based on that actor's own articulated statement, or on statements made by another that have been explicitly adopted by the secondary actor." Id. at 154 (citing Lattanzio v. Deloitte & Touche, 476 F.3d 147, 155 (2d Cir. 2007)). "An attribution requirement makes clear—to secondary actors and investors alike—that those who sign or otherwise allow a statement to be attributed to them expose themselves to liability. Those who do not are beyond the reach of Rule 10b–5's private right of action." Id. at 155. The Second Circuit has held that a law firm that drafted various securities offerings distributed for a client could not be held liable for securities fraud where the misrepresentation was not the firm's "own articulated statement" or "explicitly adopted" by the law firm. See Pac. Inv. Mgmt. Co. LLC v. Mayer Brown LLP, 603 F.3d 144, 148 (2d Cir. 2010); see also Janus Capital Grp. v. First Derivative Traders, 131 S. Ct. 2296, 2305 (2011).

The PPMs provided to the Court note that Nixon Peabody represented the respective Archipel Entities in connection with those transactions but none of the PPMs attribute any particular statements to Nixon Peabody. See Declaration of Michael Wolford, Ex. 1, ECF No. 60-3, at 8, 53, 102, 151, 201. Nixon Peabody is not identified as the author of any portion of the PPMs. Nor can the mere mention of the firm's representation of such Archipel Entity be considered an "articulated statement" by Nixon Peabody adopting the entity's statements as its own. See Lattanzio, 476 F.3d at 155. Absent such attribution, plaintiffs cannot show reliance on any statements of Nixon Peabody. See id. at 154; Wright, 152 F.3d at 175.

Similarly, Goldberg's allegation that Koeppel vouched for Gray and the Archipel Entities is insufficiently vague to meet the requirements of Rule 9(b) constituting a material misrepresentation. Plaintiff does not specify when such statement was made, to whom they were made or the substance of the Koeppel's alleged statements. "Rule 9(b) is satisfied when the complaint specifies 'the time, place, speaker, and content of the alleged misrepresentations

. . ." <u>F.D.IC. v. U.S. Mortgage Corp.</u>, 132 F. Supp. 3d 369, 379 (E.D.N.Y. 2015).

(ii) *Scheme to Defraud.* Goldberg also alleges that the Nixon Defendants participated in a scheme to defraud in violation of Rule 10b-5(a) and (c). In the present case, plaintiff alleges that the Nixon Defendants knew of the material misstatements and participated or allowed Gray's fraudulent activity. However, the allegations contained in the amended complaint do not present particularized facts supporting a strong inference of the motive to commit fraud on the part of the Nixon Defendants.

The additional allegations against the Nixon Defendants by Goldberg in the amended complaint, including that the Nixon Defendants received an unspecified amount of money from an unidentified investor, that the Nixon Defendants intentionally structured the BELP fund to minimize Gray's involvement or that the Nixon Defendants created an investment vehicle by which Nixon Peabody employees could invest in the Archipel Entities, are insufficient to establish a Section 10(b) claim against the Nixon Defendants.

*2. <u>Bennington Defendants</u>.*

In the complaint, plaintiff alleges that defendant Edwards was a general partner of BIM Management LP ("<u>BIM</u>") and chairman of the board of directors of each of Archipel Entities. Further, the complaint alleges that Edwards was a "control person" of BIM and the sole owner of Bennington, which upon information and belief, "incorporated for the reason to assist Gray in landing the Everloop transaction." Edwards is also alleged to have an ownership interest in Archipel Capital LLC and BIM. Plaintiff does not allege any actual communication, written or oral, by defendant Edwards, any actual day-to-day role for him in the Archipel Entities or any actual management tasks or responsibility.

The "group pleading doctrine" creates the presumption "that 'group-published' documents such as 'statements in prospectuses, registration statements, annual reports, [and] press releases' are attributable to 'individuals with direct involvement in the everyday business

of the company,'" who either were or acted like a corporate insider. <u>DeAngelis v. Corzine</u>, 17 F. Supp. 3d 270, 280–82 (S.D.N.Y.2014) (quoting <u>In re BISYS Sec. Litig.</u>, 397 F. Supp. 2d 430, 438 (S.D.N.Y. 2005)); <u>see also</u> <u>Illinois State Bd. of Inv. v. Authentidate Holding Corp.</u>, 369 Fed. Appx. 260, 266 (2d Cir. 2010). The group pleading doctrine applies to collectively-authored written documents, but does not apply to oral statements. <u>See</u> <u>Camofi Master LDC v. Riptide Worldwide, Inc.</u>, 2011 WL 1197659, at *6 (S.D.N.Y. Mar. 25, 2011).

Pursuant to the group pleading doctrine, Goldberg has sufficiently plead a Section 10(b) claim against Edwards and Bennington. The PPMs for Bennington - Everloop LP, Archipel Capital - Bloom Energy LP, Archipel Capital - Lineagen LP, Archipel Capital - Social Media Fund LP and the Archipel Capital - Late Stage Fund LP list Edwards as a manager of the general partner of such funds and state that he will "oversee its operations". <u>See</u> Wolford Dec., Ex. 1, ECF No. 60-3, at 5, 10, 55, 99, 104, 153, 203. Further, the limited partnership agreements for such limited partnerships vested the management, operation and policy power of the partnership in the general partner. <u>Id</u>. at 27, 72, 126, 172, 223. As such, the misstatements and omissions contained in the PPMs can be attributable to the Bennington Defendants.

The amended complaint further sufficiently pleads loss causation and reasonable reliance on the part of the plaintiffs. As a result, the Section 10(b) claim against the Bennington Defendants is adequately plead and the motion to dismiss such claim will be denied.

*(B) <u>Claim 2 - Section 20 Claims</u>.*

In order to state a claim under Section 20(a) of the Exchange Act "a plaintiff must show: (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." <u>Carpenters Pension Trust Fund v. Barclays, PLC</u>, 750 F.3d 227, 236 (2d Cir. 2014). A finding of "control" under the second prong requires a fact-intensive inquiry into the "power to direct or cause the direction of the management and policies of a

person, whether through the ownership of voting securities, by contract, or otherwise." In re IPO Secs. Litig., 241 F. Supp. 2d 281, 393 (S.D.N.Y. 2003). "Because Section 20(a) liability requires an individualized determination of the defendant control person's particular culpability, it stands to reason that an allegation of culpable participation requires particularized facts of the controlling person's conscious misbehavior or recklessness." Special Situations III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd., 33 F. Supp. 3d 401, 438 (S.D.N.Y. 2014).

In the amended complaint, Goldberg asserts that Edwards constituted a control person as a result of his ownership interest in Archipel Capital LLC, his management position at BIM Management LP, his signatory authority of certain of the funds' bank accounts and his status as an influential business partner and mentor to defendant Gray. Edwards contends that such facts, even if accepted as true, are insufficient to find that Edwards controlled Gray's actions or was a culpable participant in the fraud.

"Actual control is essential to control person liability." In re Livent, Inc. Sec. Litig., 78 F. Supp. 2d 194, 221 (S.D.N.Y. 1999); see also In re Global Crossing, Ltd. Sec. Litig., 2005 WL 1875445, at *3 (S.D.N.Y. Aug. 5, 2005) ("To be liable as a control person, the defendant must actually possess, in fact, rather than in theory, the ability to direct the actions of the controlled person."). Officer or director status alone does not constitute control for the purposes of § 20(a) liability. See, Rubinstein v. Skyteller, Inc., 48 F. Supp. 2d 315, 323 (S.D.N.Y. 1999) (allegation that defendant is Treasurer and/or Chief Financial Officer of company insufficient to establish control). Similarly, "exercise of influence, without power to direct or cause the direction of management and policies through ownership of voting securities, by contract, or in any other direct way, is not sufficient to establish control for purposes of Section 20(a)." In re Alstom SA, 406 F. Supp. 2d 433, 486 (S.D.N.Y. 2005). "Minority stock ownership is not enough to establish control person liability, since minority stock ownership does not give the owner the power to direct the primary violator." Id. at 492.

The allegations contained in the amended complaint are insufficient to state a claim for control person liability under Section 20(a). None of the factual allegations made by Goldberg establish that Edwards or Bennington had the power to direct Gray's management of the Archipel Entities. As a result, plaintiffs have failed to establish the essential element of control and their Section 20(a) claim will be dismissed.

### (C) Claim 3 - RICO Claims.

Goldberg asserts violations of the RICO statute, 19 U.S.C. § 1962 alleging that defendants derived income from a pattern of racketeering activity. However, part of the RICO statute, 18 U.S.C. § 1964(c), prevents plaintiffs from pleading a civil RICO action upon "any conduct that would been actionable as fraud in the purchase or sale of securities . . .". See 18 U.S.C. § 1964(c) (the "RICO Amendment"). The purpose of the RICO Amendment was not merely "'to eliminate securities fraud as a predicate offense in a civil RICO action,' but also to prevent plaintiffs from 'pleading other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud.'" Ling v. Deutsche Bank, 2005 WL 1244689, at * (S.D.N.Y. May 26, 2005) (quoting H.R. Conf. Rep. No. 104-369, at 47). "[T]he purpose of the bar was to prevent litigants from using artful pleading to boot-strap securities fraud cases into RICO cases, with their threat of treble damages." MLSMK Inv. Co. v. JP Morgan Chase & Co., 651 F.3d 268, 274 (2d Cir. 2011). "[T]he RICO Amendment bars claims based on conduct that could be actionable under the securities laws even when the plaintiff, himself, cannot bring a cause of action under the securities laws." Id. at 275 (quoting Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, 612 F. Supp. 2d 267, 281 (S.D.N.Y. 2009)).

To determine whether a RICO claim is barred pursuant to the provisions of § 1964(c), the relevant inquiry "is whether the predicate acts of plaintiffs' RICO claim could have been the subject of a securities fraud action brought either by plaintiffs themselves or by the SEC." In re

LIBOR-Based Financial Instruments Antitrust Litig., 935 F. Supp. 2d 666, 726 (S.D.N.Y. 2013).

In the present case, the amended complaint alleges a RICO violation only with regards to one of the funds' settlement with Everloop which it argues was fraudulent and resulted in defendant Gray utilizing $350,000.00 in furtherance of his ongoing fraud. The predicate offenses consisted of mail and wire fraud in distributing a release to the plaintiffs and email concerning the terms of the settlement, which plaintiffs claim were fraudulent.

However, the only alleged fraudulent conduct regarding such settlement was that Gray allegedly misused the settlement proceeds to further the ongoing ponzi scheme. The allegations are therefore not distinct from the alleged securities fraud. As a result, such claim should be barred under the RICO Amendment.

Goldberg additionally argues that an exception to the RICO Amendment exists in cases where a defendant has been criminally convicted of securities fraud. As Gray has pled guilty to securities fraud, Goldberg contends that plaintiffs should be able to maintain their RICO claims against the defendants. However, the criminal conviction exception is narrow and only applies to those defendants who have been convicted of criminal fraud. See Kaplan v. S.A.C. Capital Advisors, L.P., 104 F. Supp. 3d 384, 388 (S.D.N.Y. 2015).

As the RICO Amendment precludes Goldberg's RICO claims, such claims shall be dismissed with respect to both the Nixon Defendants and the Bennington Defendants.

*(D) Claim 4 - Fraud.*

Under New York law, the five elements of a fraud claim must be shown by clear and convincing evidence: (1) a material misrepresentation or omission of fact, (2) made by defendant with knowledge of its falsity, (3) and intent to defraud, (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff. See Crigger v. Fahnestock & Co., Inc., 443 F.3d 230, 234 (2d Cir. 2006). Each of the elements must be supported by factual allegations containing the details constituting the wrong sufficient to satisfy New York State Civil Procedure Law & Rule 3016(b)." Cohen v. Houseconnect Realty Corp., 734 N.Y.S.2d 205, 206 (App. Div.

2001).  Similar to Federal Rule of Civil Procedure 9(b), New York C.P.L.R. § 3016(b) requires that "the circumstances constituting [fraud] shall be stated in detail."

      *1. Nixon Defendants*.

      As with the Section 10(b) claims, Goldberg has failed to adequately allege that the Nixon Defendants made any material representations that were false or that defendant knew the representations were false with an intent to deceive.  As a result, the common law fraud claim against the Nixon Defendants will be dismissed.

      *2. Bennington Defendants*.

      As discussed previously, pursuant to the group pleading doctrine, the representations contained in the PPMs concerning Gray's qualifications and the omission of Gray's disciplinary history are attributable to Edwards and Bennington given their involvement in the business of the funds.  Further, such representations were also material.  Goldberg has also adequately plead the second element of a fraud claim against Edwards and Bennington.  At the motion to dismiss stage, New York "requires only that the complaint include facts from which it is possible to infer defendant's knowledge of the falsity of its statements".  <u>Houbigant, Inc. v. Deloitte & Touche</u>, 753 N.Y.S.2d 493, 501 (App. Div. 2003).  Therefore, the motion to dismiss the common law fraud claim against the Bennington Defendants will be denied.

      *(E) Claim 5 - Negligent Misrepresentation*.

      To state a claim for negligent misrepresentation under New York law, the plaintiff must allege that "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." <u>Hydro Investors, Inc. v. Trafalgar Power Inc.</u>, 227 F.3d 8, 20 (2d Cir. 2000); <u>see also</u> <u>Eiseman v. State of New York</u>, 70 N.Y.2d 175, 187–88 (1987). Under the "duty" element, "New York strictly limits negligent

misrepresentation claims to situations involving 'actual privity of contract between the parties or a relationship so close as to approach that of privity.'" In re Time Warner Inc. Sec. Litig., 9 F.3d 259, 271 (2d Cir.1993) (quoting Ossining Union Free Sch. Dist. v. Anderson LaRocca Anderson, 73 N.Y.2d 417 (1989)); see also J.A.O. Acquisition Corp. v. Stavitsky, 8 N.Y.3d 144, 148 (2007) ("A claim for negligent misrepresentation requires the plaintiff to demonstrate ... the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff.").

    1. *Nixon Defendants.*

    The Nixon Defendants allege that no relationship or contact with Goldberg or the other limited partners in the Archipel Entities could remotely satisfy the New York standard. In LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co., 951 F. Supp. 1071, 1093–94 (S.D.N.Y.1996), a case decided under the pleading standards abrogated by the Supreme Court in Iqbal and Twombly, the complaint contained allegations of direct communication between six of the twenty-six plaintiffs and the rating agency, which "evidence[d] an intent to assure plaintiffs of the validity of the rating and influence plaintiffs to purchase the Bonds." Id. at 1094. Here, the only allegation of any direct contact between plaintiffs and Nixon Peabody or Koeppel is plaintiff's allegation that Koeppel "vouched" for Gray and Edwards at some unspecified time to an unspecified person. This minimal, non-specific contact is insufficient to establish a special relationship between plaintiffs and the Nixon Defendants or imposed a duty on the Nixon Defendants towards the limited partners of their limited partnership client. Therefore, plaintiffs have failed to state a claim for negligent misrepresentation under New York law against the Nixon Defendants.

    2. *Bennington Defendants*.

    The material misstatements contained in the PPMs are attributable to the Bennington Defendants given Edwards's role in the Archipel Entities and BIM , the entity owned by Bennington, serving as general partner of various Archipel Entities, including BELP. "There is

no question that a managing or general partner of a limited partnership is bound in a fiduciary relationship with the limited partners." <u>Riviera Congress Assoc. v. Yassky</u>, 18 N.Y.2d 540, 547 (1966).

The fiduciary relationship between Edwards and the limited partners constitutes the type of special relationship to support a negligent misrepresentation claim. The amended complaint adequately pleads that Edwards and Bennington knew or should have known that the statements contained in the PPMs were incorrect and that Goldberg reasonably relied on such false information. As such, the amended complaint sufficiently states a cause of action against the Bennington Defendants for negligent misrepresentation.

*(F) <u>Claim 6 - Breach of Fiduciary Duty</u>.*

To state a claim for a breach of fiduciary duties under New York law, a plaintiff must establish: "(1) a fiduciary duty existing between the parties; (2) the defendant's breach of that duty; and (3) damages suffered by the plaintiff which were proximately caused by the breach." <u>Metropolitan West Asset Management, LLC v. Magnus Funding, Ltd.</u>, 2004 WL 1444868, at *8 (S.D.N.Y. June 25, 2014). While acknowledging the amorphous nature of a fiduciary relationship, New York courts have generally described it as one in which a party "reposes confidence in another and reasonably relies on the other's superior expertise or knowledge." <u>Henneberry v. Sumitomo Corp. of Am.</u>, 532 F. Supp. 2d 523, 550 (S.D.N.Y. 2007) (citing <u>WIT Holding Corp. v. Klein</u>, 724 N.Y.S.2d 66, 68 (App.Div. 2001).

The New York law on breach of fiduciary duty is broad, vague, and not very helpful in determining whether any particular relationship rises to the level of "fiduciary." It is often stated that a fiduciary relationship "may exist where one party reposes confidence in another and reasonably relies on the other's superior expertise or knowledge, but an arms-length business relationship does not give rise to a fiduciary obligation." <u>WIT Holding Corp. v. Klein</u>, 724 N.Y.S.2d 66, 68 (2d Dept. 2001). "Broadly stated, a fiduciary relationship is one founded upon trust or confidence reposed by one person in the integrity and fidelity of another. It is said that the

relationship exists in all cases in which influence has been acquired and abused, in which confidence has been reposed and betrayed. The rule embraces both technical fiduciary relations and those informal relations which exist whenever one man trusts in, and relies upon, another." Penato v. George, 383 N.Y.S.2d 900, 904–5 (2d Dept.1976).

Under New York law, a fiduciary duty arises if "confidence is reposed on one side and there is resulting superiority and influence on the other." United States v. Chestman, 947 F.2d 551, 568 (2d Cir.1991); see also Daly v. Metropolitan Life Ins. Co., 782 N.Y.S.2d 530, 535 (Sup.Ct. 1992) ("[A] fiduciary duty arises, even in a commercial transaction, where one party reposed trust and confidence in another who exercises discretionary functions for the party's benefit or possesses superior expertise on which the party relied.").

1. *Nixon Defendants*.

The Nixon Defendants contend that as a matter of law they owe no fiduciary duty to plaintiffs. New York courts have found that counsel to a limited partnership does not owe any duty to the limited partners as it does not have any relationship, fiduciary or otherwise, with the limited partners. See Eurycleia Partners, LP v. Seward & Kissel, LLP, 12 N.Y.3d 553, 561-562 (2009); see also In re Bayou Hedge Funds Inv. Litig., 472 F. Supp. 2d 528, 534 (S.D.N.Y. 2007). This is consistent with Section 12.14 of each of the limited partnership agreements of certain Archipel Entities wherein each investor acknowledges that Nixon Peabody "does not represent any Limited Partner in connection with its investment in the Partnership, and that Counsel shall owe no duties to any Limited Partner." See Wolford Dec., Ex. 1, ECF No. 60-3, at 41, 86, 121, 140, 186, 238.

In the alternative, Goldberg contends that the Nixon Defendants established such a fiduciary duty to plaintiffs when the allegedly vouched for the legitimacy of Gray and Edwards to investors. However, as previously discussed, plaintiff fails provide any details concerning this alleged correspondence. As a result, the allegations against the Nixon Defendants are

insufficient to establish that the Nixon Defendants owed a fiduciary or special relationship to plaintiff and the breach of fiduciary duty claim against them must be dismissed.

      *2. Bennington Defendants.*

      Similarly, the Bennington Defendants argue that they do not owe a fiduciary duty to Goldberg or the limited partners. However, New York courts have held that "a managing or general partner of a limited partnership is bound in a fiduciary relationship with the limited partners and the latter are, therefore, *cestuis que trustent*." Friedman v. Dalmazio, 644 N.Y.S.2d 548, 550 (App. Div. 1996). As Edwards served as a manager of the general partner of the various funds, he did owe a fiduciary duty to the limited partners of such funds. Given the alleged misstatements in the PPMs, Goldberg has adequately pled that the Bennington Defendants breached such duty.

      *(G) Claim 7 - Conversion.*

      "[C]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 403–04 (2d Cir. 2006). Conversion is predicated on "(1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiffs [sic] rights." Pacific M. Intern. Corp. v. Raman Intern. Gems, Ltd., 888 F. Supp. 2d 385, 396 (S.D.N.Y.2012).

      "Under New York law, [t]o state a claim for conversion, [a] plaintiff must allege that '(1) the party charged has acted without authorization, and (2) exercised dominion or a right of ownership over property belonging to another[,] (3) the rightful owner makes a demand for the property, and (4) the demand for the return is refused.'" Sabilia v. Richmond, 2011 WL 7091353, at *19 (S.D.N.Y. Oct. 26, 2011) (quoting Seanto Exps. v. United Arab Agencies, 137 F. Supp. 2d 445, 451 (S.D.N.Y.2001)). To state a conversion claim "'[w]here the property is money, [the money] must be specifically identifiable and be subject to an obligation to be returned or to be

otherwise treated in a particular manner.'" <u>Cruz v. TD Bank, N.A.</u>, 855 F. Supp. 2d 157, 174 (S.D.N.Y. 2012) (quoting <u>Republic of Haiti v. Duvalier</u>, 626 N.Y.S.2d 472, 475 (1st Dep't 1995)).

When the defendant's "'original possession [of the property] is lawful, a conversion does not occur until the defendant refuses to return the property after demand or until he sooner disposes of the property.'" <u>Schwartz v. Capital Liquidators, Inc.</u>, 984 F.2d 53, 54 (2d Cir. 1993) (quoting <u>Johnson v. Gumer</u>, 464 N.Y.S.2d 318, 319 (4th Dep't 1983)). While a lawful custodian of property cannot be charged with converting that property "until after a demand and refusal," <u>Regions Bank v. Wieder & Mastroianni, P.C.</u>, 526 F. Supp. 2d 411, 414 (S.D.N.Y.2007), a "demand and refusal" will be considered futile, and thus not be required, in certain limited circumstances, including where the custodian "knows it has no right to the goods," <u>State v. Seventh Regiment Fund, Inc.</u>, 98 N.Y.2d 249, 260 (2002). Furthermore, while a party is generally "privileged to commit acts which would otherwise be a ... conversion when [it] acts pursuant to a court order which is valid or fair on its face," <u>Calamia v. City of New York</u>, 879 F.2d 1025, 1031 (2d Cir.1989).

   1. *Nixon Defendants*.

The only money that the Nixon Defendants are alleged to have received was attorneys' fees resulting from Nixon Peabody's work on the settlement between BELP and Everloop. The Nixon Defendants contend that the fees were legitimately earned for its services and that there is no indication that Goldberg has any legal right to the fees. Plaintiff only alleges that he demanded an accounting for the proceeds of the Everloop settlement. <u>See</u> Complaint at ¶¶ 101, 259.

In the present case, Goldberg has failed to properly plead that its has a proper possessory right to such funds, i.e. that there was a lack of consideration for such legal fee. Further, plaintiff has not plead that a proper demand has been made to the Nixon Defendants for the return of such funds and such demand was refused. Therefore, Goldberg has failed to adequately pled a conversion claim against the Nixon Defendants.

2. *Bennington Defendants*.

The amended complaint asserts that the Bennington Defendants had power over investor monies which were provided to the Archipel Entities to invest in entities like Everloop and Twitter.

"Identifiable funds" include named bank accounts as long as the recovery is for a "particular and definite sum of money." ADP Investor Commc'n Servs., Inc. v. In House Attorney Servs., Inc., 390 F. Supp. 2d 212, 224 (E.D.N.Y.2005). While Goldberg identifies the total investments made in various Archipel Entities, such amounts do not constitute a particularized parcel of funds as required for a conversion claim. Further, plaintiff has not alleged that a demand has been made of the Bennington Defendants for the alleged property. As the initial possession was lawful, there is no conversion in the absence of a "refusal to return the property upon demand." Salatino v. Salatino, 881 N.Y.S.2d 721, 724 (App. Div. 2009). Therefore, the amended complaint fails to adequately allege a conversion claim against the Bennington Defendants.

*(H) Claim 8 - Legal Malpractice*.

Goldberg has alleged legal malpractice against the Nixon Defendants, which is premised on the Nixon Defendant's role in the settlement between BELP and Everloop. Plaintiff alleges that the Nixon Defendants improperly retained $350,000 in legal fees and knowingly permitted Gray to improperly transfer another $350,000 to other Archipel Entities, without providing such information to the plaintiff investors and threatening them with lawsuits when they requesting information concerning the settlement.

"[A]bsent an attorney-client relationship, a cause of action for legal malpractice cannot be stated." Fed. Ins. Co. v. N. Am. Specialty Ins. Co., 47 A.D.3d 52, 59 (1st Dept. 2007). Absent privity, counsel to a limited partnership does not owe a duty to the limited partners of such partnership. See Eurycleia Partners v. Seward & Kissel, LLP, 12 N.Y.3d 553, 561-562 (2009).

As the Nixon Defendants represented the limited partnership, BELP, and not the limited partner investor of BELP, Goldberg cannot maintain a legal malpractice claim against the Nixon Defendants.

Plaintiff appears to argue that privity exists as the Nixon Defendants were aware of Gray's alleged ongoing fraudulent conduct and where therefore aiding and abetting him. However, the amended complaint does not contain particularized facts to support such a finding.

### (I) *Claim 9 - Unjust Enrichment*.

The essential elements to establish an unjust enrichment claim under New York law are that (1) defendant received money belonging to plaintiff; (2) defendant benefitted from the receipt of money; and (3) under principles of equity and good conscience, defendant should not be permitted to keep the money. See Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat'l Ass'n, 731 F.2d 112, 125 (2d Cir. 1984).

When considering an unjust enrichment claim, a court's "essential inquiry" is one of "equity and good conscience." Paramount Film Distrib. Corp. v. State, 30 N.Y.2d 415, 421 (1972). Though these are "broad considerations", the New York courts have applied them consistently in cases involving "gratuitous donee[s]" or "[i]nnocent parties." Simonds v. Simonds, 45 N.Y.2d 233 (1978). In those cases, New York courts have required proof that the innocent party received a "specific and direct benefit" from the property sought to be recovered, not an "indirect benefit." Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000). The direct-indirect distinction is consistent with a separate line of unjust enrichment cases in New York holding that a plaintiff's relationship with the defendant cannot be "too attenuated." See Sperry v. Crompton Corp., 8 N.Y.3d 204, 216 (2007) (concluding that "the connection between the purchaser of tires and the producers of chemicals used in the rubber-making process is simply too attenuated to support an unjust enrichment claim").

1. *Nixon Defendants*.

Similar to Goldberg's conversion claim, plaintiff's unjust enrichment claim is based upon the attorney's fees Nixon Peabody allegedly earned resulting the settlement between BELP and Everloop. "[T]he payment . . . of operating expenses (such as legal fees) using misappropriated funds does not confer a direct and specific benefit" sufficient to establish a claim from unjust enrichment. In re Bayou Hedge Funds Investment Litigation, 472 F. Supp. 2d 528, (S.D.N.Y. 2007). Goldberg fails to allege that the monies paid to Nixon Peabody belonged to plaintiff as he does not alleged that there was a lack of consideration or that Nixon Peabody was somehow paid more than what it was owed for its legal services. Plaintiff further seems to allege that the Nixon Defendants permitted Gray to improperly divert the proceeds of the settlement away from the BELP investors. However, plaintiff does not allege that such money was ever in the control or custody of the Nixon Defendants. As a result, Goldberg has failed to adequately allege a claim of unjustment enrichment against the Nixon Defendants.

2. *Bennington Defendants*.

The amended complaint alleges that the Bennington Defendants were unjustly enriched as a result of the five percent (5%) management fee collected by the general partner of the various investing funds. Further, Goldberg contends that the Bennington Defendants were enriched by the settlement proceeds received from Everloop.

However, "[w]here the parties executed a valid and enforceable written contract governing a particular subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded." IDT Corp. v. Morgan Stanley Dean Witter & Co., 12 N.Y.3d 132, 142 (2009). The express terms of the limited partnership agreements of the Archipel Entities provided that a five percent (5%) management fee be paid to BIM Management LP. As Goldberg's unjust enrichment claims are premised upon a management fee governed by an enforceable contract, such unjust enrichment claims are precluded. Further, plaintiff fail to allege that the Bennington Defendant ever received the

proceeds of the Everloop settlement. Rather, plaintiff contends that the settlement proceeds were diverted to other funds by Gray, permitting the Bennington Defendants to profit from the management fee associated with such funds. Again, such a theory is precluded given the express terms of the limited partnership agreement. As such, the amended complaint does not sufficiently allege an unjust enrichment claim against the Bennington Defendants.

### *(J)* *Claims 10 - 13 - New York State Debtor and Creditor Law 273 - 276.*

Claims 10 through 13 of the amended complaint seek avoidance and recovery of the transfers as actual or constructive fraudulent conveyances under New York State Debtor and Creditor Law ("NYDCL") §§ 273, 274, 275 and 276.

A transfer is deemed a constructively fraudulent conveyance under NYDCL §§ 273, 274 and 275, if it is made without "fair consideration," and one of the following conditions is met:

> (i) the transferor is insolvent or will be rendered insolvent by the transfer in question, DCL § 273;
> (ii) the transferor is engaged in or is about to engage in a business transaction for which its remaining property constitutes unreasonably small capital, DCL § 274; or
> (iii) the transferor believes that it will incur debt beyond its ability to pay, DCL § 275.

The Second Circuit has stated that "fair consideration" under the NYDCL has three elements: (1) the transferee must convey property in exchange for the transfer, or the transfer must discharge an antecedent debt; (2) what the transferee exchanges for the transfer must be of "fair equivalent" value to the property transferred by the debtor; and (3) the transferee must make the exchange in "good faith." See In re Sharp Intern. Corp., 403 F.3d 43, 53–54 (2d Cir. 2005) (citing HBE Leasing v. Frank, 61 F.3d 1054, 1058–59 (2d Cir. 1995)) ("fair consideration" requires not only that the exchange be for equivalent value, but also that the conveyance be made in good faith). "Under New York law, the party seeking to have the transfer set aside bears the burden of proof on the element of fair consideration and, since it is essential to a finding of fair consideration, good faith." In re Actrade Financial Technologies Ltd., 337 B.R. 791, 802 (S.D.N.Y. Bankr. 2005). The party seeking to set aside the transfer must prove the elements of

a claim for constructive fraudulent conveyance under the NYDCL by a preponderance of the evidence standard. See Lippe v. Bairnco Corp., 249 F. Supp. 2d 357, 376 n. 6 (S.D.N.Y. 2003)

Under NYDCL § 272(a), "fair consideration" is given for property or an obligation: "[w]hen in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied." NYDCL § 272(a).

Section 276 of the NYDCL allows a party to avoid any "conveyance made ... with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors." NYDCL § 276. To adequately plead a claim to recover actual fraudulent transfers under the NYDCL, the complaint must state with particularity the factual circumstances constituting fraud under Rule 9(b). See Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Secs. Corp., 351 F. Supp. 2d 79, 106–07 (S.D.N.Y. 2004) (applying the pleading requirements of Rule 9(b) to actual fraud claims under the NYDCL). "Actual fraudulent intent must be proven by clear and convincing evidence, but it may be inferred from the circumstances surrounding the transaction, including the relationship among the parties and the secrecy, haste, or unusualness of the transaction." HBE Leasing Corp. v. Frank, 48 F.3d 623, 639 (2d Cir.1995).

1. *Nixon Defendants*.

The amended complaint alleges that Nixon Peabody received a fraudulent conveyance as a result of its receipt of legal fees associated with the settlement between BELP and Everloop. However, there is no allegation that there was a lack of consideration for the payment to Nixon Peabody or that it was paid more than it was owed. As the lack of consideration is an essential element of a constructive fraudulent conveyance claim, Goldberg has failed to adequately allege a cause of action pursuant to DCL §§ 273, 274 or 275.

Further, Goldberg has failed to plead factual circumstances regarding payment of a legal fee to the Nixon Defendants which would evidence actual fraudulent intent concerning such transfer. As a result, plaintiff claim against the Nixon Defendants pursuant to DCL § 276 will be dismissed.

2. *Bennington Defendants*.

The amended complaint fails to identify any transfers to the Bennington Defendants which it seeks to reverse pursuant to the DCL. "[A] complaint must allege that the defendant participated in the transfer at issue and that the defendant was the transferee or beneficiary of that transfer." In re Vivaro Corp., 524 B.R. 536, 559 (Bankr. S.D.N.Y. 2015). Given Goldberg's failure to identify any transfer to the Bennington Defendants, the motion to dismiss concerning the DCL claims will be granted.

*(K) Cross Motion to Amend*.

Goldberg has moved pursuant to Federal Rule of Civil Procedure 15(a)(2) to further amend its complaint. Motions to amend under Rule 15(a)(2) serve a multitude of purposes including curing a defective pleading, correcting insufficiently stated claims, amplifying a previously alleged claim and stating additional claims. Both the Nixon Defendants and the Bennington Defendants opposed plaintiff's motion arguing that the motion to amend is futile as the claims contained in the proposed Second Amended Complaint still fail to state proper claims against them. A review of the proposed Second Amended Complaint shows that plaintiff wishes to add two additional causes of action, one alleging that the Nixon and Edwards Defendants aided and abetted fraud and the other alleging that the Nixon Defendants aided and abetted a breach of fiduciary duty.

The Court previously permitted Goldberg to amend his complaint. See December 9, 2015 Decision & Order, ECF No. 52. In such decision, plaintiff was advised that further amendments would not be entertained. Even given such warning, the Court has reviewed plaintiff's proposed Second Amended Complaint and finds that its amendments would be futile.

(L) *Receiver's Motion to Stay.*

The Receiver has brought a motion to stay the present action as against the Archipel Entities. The Receiver argues that the SEC Action involves largely overlapping issues of fact and law and overlapping relief that would benefit the same investors. Further, the Receiver argues that the burden of defending both actions will ultimately diminish the likelihood of recovery for the plaintiff class. The Receiver contends that the proceedings against only the Archipel Entities should be stayed. Plaintiffs do not generally object to a stay but wish to obtain discovery from the Archipel Entities in order to proceed against the other defendants.

A court's power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants. See Kashi v. Gratsos, 790 F.2d 1050, 1057 (2d Cir. 1986).

In Nuccio v. Duce, 2015 WL 1189617 at *5 (N.D.N.Y. March 16, 2015), the Court identified five factors that should be examined in deciding whether to stay proceedings: (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation, and (5) the public interest. "[A] total stay of civil discovery pending the outcome of the related . . . proceedings . . . is an extraordinary remedy." In re Par Pharm. Inc. Sec. Litig., 133 F.R.D. 12, 13 (S.D.N.Y. 1990). A stay is less likely to be granted where a defendant other than

the defendant in the criminal action is the party seeking the stay.  See Hicks v. City of New York, 268 F. Supp. 2d 238, 242 (E.D.N.Y. 2003).

The Court appreciates that by defending two separate but overlapping actions, the Receiver might incur additional expense and diminution of assets, which may ultimately go to investors.  However, the most important factor in the analysis, the prejudice to a criminal defendant's rights, is not a factor here, because Gray has plead guilty in the criminal case against him.  Further, the amended complaint alleges a scheme of fraud which is quite factual. As a result, preservation of documents and memories is of paramount importance.  Permitting both the plaintiffs and the remaining defendants to begin discovery, including depositions, is imperative.  A stay will stifle such critical discovery and impede the efficient and expeditious progress of this case.  For such reasons, the Court will deny the Receiver's motion for a stay

## IV.  CONCLUSION

The amended complaint fails to adequately state a cause of action against the Nixon Defendants.  It also fails to state an adequate cause of action against the Bennington Defendants with regards to numerous of plaintiff's claims, including the Section 20(a), RICO, conversion, unjust enrichment and debtor & creditor law claims.  Therefore, the motion to dismiss filed by the Bennington Defendants will be granted in part.  For the reasons stated, plaintiffs' motion to amend his complaint is denied and the Receiver's motion for a stay is also denied.

Therefore, it is ORDERED that:

1. Defendants Nixon Peabody, LLP and John Koeppel, Esq.'s motion to dismiss the Amended Complaint for failure to state a cause of action (ECF No. 60) is **GRANTED;**

2. Defendants Bennington Investment Management, Inc. and Gregory Edwards's motion to dismiss the Amended Complaint for failure to state a cause of action (ECF No. 61) is **GRANTED** in part and **DENIED** in part;

3. The Amended Complaint against defendants Nixon Peabody, LLP and John Koeppel, Esq. is **DISMISSED**;

3. The Section 20(a) claim (Claim 2), RICO claim (Claim 3), conversion claim (Claim 7), Unjust Enrichment (Claim 9) and Debtor & Creditor Law claims (Claims 10 -13) in the Amended Complaint against defendants Bennington Investment Management, Inc. and Gregory Edwards are **DISMISSED**;

5. The Section 10(b) claim (Claim 1), fraud claim (Claim 4), negligent misrepresentation (Claim 5) and breach of fiduciary duty claim (Claim 6) in the Amended Complaint against defendants Bennington Investment Management, Inc. and Gregory Edwards **REMAIN**,

6. Plaintiff's motion to amend his complaint (ECF No. 69) is **DENIED**; and

7. The Receiver's motion to stay (ECF No. 34) is **DENIED**.

IT IS SO ORDERED.

_____
United States District Judge

Dated: August 2, 2016
       Utica, New York