UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

STEVEN AMERIO and ANDREW GOLDBERG,
Individually and as Co-Lead Plaintiffs on behalf
of all others similarly situated,

                        Plaintiffs

              -v-                                          5:15-CV-538

GREGORY W. GRAY, JR.; GREGORY P.
EDWARDS; ARCHIPEL CAPITAL LLC; BIM
MANAGEMENT LP; and BENNINGTON
INVESTMENT MANAGEMENT, INC.

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -


APPEARANCES:                                    OF COUNSEL:

CHERUNDOLO LAW FIRM, PLLC                        JOHN C. CHERUNDOLO, ESQ.
Attorneys for plaintiffs
AXA Tower One 17th Floor
100 Madison Street
Syracuse, NY 13202

                                                J. PATRICK LANNON, ESQ.




WILENTZ GOLDMAN & SPITZER PA                     KEVIN P. RODDY, ESQ.
Attorneys for plaintiffs
90 Woodbridge Center Drive, Suite 900
Woodbridge, NJ 07095


                                                JAMES E. TONREY, JR., ESQ.

GREGORY W. GRAY, JR.
Defendant *pro se*
60 School Street #1192
Orchard Park, NY 14127


TARTER KRINSKY & DROGIN LLP        MICHAEL J. GRUDBERG, ESQ.
Attorneys defendants Edwards,
Archipel Capital LLC, BIM Management
LP, and Bennington Investment
Management, Inc.
1350 Broadway
New York, NY 10018


DAVID N. HURD
United States District Judge

### MEMORANDUM–DECISION and ORDER

## I.    INTRODUCTION

On April 30, 2015, plaintiff Andrew Goldberg ("Goldberg") brought this suit alleging an

ongoing pattern of securities fraud—among other claims—against defendants. Plaintiff

Steven Amerio joined the action on December 22, 2017, via plaintiffs' Second Amended

Complaint, which is also the current operative pleading. In substance, Goldberg and Amerio

allege that defendant Gregory W. Gray ("Gray"), as the managing partner of defendant

Archipel Capital, LLC ("Archipel"), and a general partner of defendant BIM Management LP

("BIM"), duped clients into investing in a company whose prospects Gray overstated at every

opportunity.

Defendant Gregory P. Edwards ("Edwards"), meanwhile, is BIM's other general

partner, and had at least some measure of control over Archipel and BIM, as well as full

control of his own investment company, defendant Bennington Investment Management, Inc.

2

("Bennington"). Plaintiffs allege that Edwards gave extra weight and validity to Gray's machinations, especially in the face of Gray's troubled disciplinary history in investment circles, and plaintiffs allege that they also expected him to supervise Gray. Given the expansive number of investors that plaintiffs allege succumbed to the scheme, plaintiffs have now moved to certify those allegedly led astray by defendants as a unified class under Federal Rule of Civil Procedure ("Rule") 23. Edwards and BIM responded in opposition and plaintiffs replied.

## II.  BACKGROUND

The claims began with the creation of the defendant corporate entities. Archipel was firstborn, created by Gray in 2005. Second Amended Complaint ("SAC"), ¶ 10.[1] Gray retained a 65.1% interest in Archipel, but Edwards also held a 25% interest.

In December of 2008, the New York Stock Exchange ("NYSE") formally censured and barred Gray from association with any NYSE member firms. SAC ¶ 17. NYSE found that Gray had engaged in unauthorized trades in multiple customer accounts and had harassed and threatened—even with death—complaining customers and their families. SAC ¶ 17. The Securities and Exchange Commission upheld Gray's discipline on appeal. SAC ¶ 146. As a result, in February 2008, Gray surrendered his securities license, and he remains unlicensed. SAC ¶ 147.

Despite Gray's invalid license, he and Edwards incorporated BIM in Delaware on May 10, 2011, with Gray and Edwards maintaining the same ownership interests in it as they each held in Archipel. SAC ¶ 20. Several Archipel offshoots ("the Archipel entities") followed in

---

[1] The facts presented here are taken entirely from Goldberg and Amerio's Second Amended Complaint, because for the purposes of class certification "the allegations in the complaint are accepted as true." *Thompson v. Linvatec Corp.*, 2010 WL 2560524, at *3 (N.D.N.Y. June 22, 2010). As such, the facts therein are assumed true for the sole purpose of determining whether plaintiffs have met their burden of proving the merits of class certification.

later years, each targeting the acquisition of stock in varied industries to varied success. SAC ¶¶ 22-29. BIM functions as the General Partner of each Archipel entity. SAC ¶ 21. Gray directed BIM's "investment and operational activities," apparently alongside Edwards. *Id.* Across all of the Archipel entities, defendants raised approximately $19.6 million from at least 140 individuals and investors. SAC ¶ 33.

At some point, Gray and Edwards became aware of Everloop, Inc. ("Everloop"), a corporation from California attempting to develop social media for children not yet old enough to legally access social media sites such as Facebook. SAC ¶ 36. Looking to capitalize on Everloop, defendants formed Bennington-Everloop, LP ("BELP") to raise funds to invest in it. SAC ¶ 35.

However, Everloop's founder distrusted Gray for his less than exemplary disciplinary record. SAC ¶ 14. Goldberg and Amerio allege that Edwards formed Bennington, which he solely owned, to lend his credibility to the enterprise and to secure Gray's relationship with Everloop. *Id.* Gray, for his part, worked for Bennington as an advisor. SAC ¶ 15. The tactic apparently worked, because Everloop gave Edwards a seat on its Board of Directors, and Gray an advisory seat. SAC ¶ 47.

The players and their roles being set, Goldberg and Amerio allege that Gray proceeded to direct investor business into Everloop through a series of misstatements and misrepresentations. From the outset, the Private Placement Memorandum ("PPM") that BELP produced for potential investors included biographical and risk sections, but neither section informed potential investors as to Gray's disciplinary history. SAC ¶¶ 49-50. Instead, the PPMs described Gray as "a registered investment advisor for NASD Licenses: Series 6, 7, 63, 65." SAC ¶ 161.

Goldberg and Amerio make several further allegations as to Gray's conduct in inducing investments. Specifically, plaintiffs allege that Gray made: (1) a false representation that Everloop had obtained educational grants in the total amount of $27 million; (2) a false representation that Everloop was launching a learning channel network with a literacy education publisher; (3) a false representation concerning the extent to which Everloop had developed a text messaging product that plaintiffs allege never progressed past its initial stages; (4) false representations in 2012 that Everloop was in advanced stage meetings with Major League Baseball and the National Football League regarding the use of Everloop products; (5) several further false statements between 2011 and 2013 regarding possible investment in Everloop by other investors, including Facebook executives; and (6) Everloop's general financial condition including its cash flow, indebtedness, and its registered users. SAC ¶¶ 42-46, 57-59, 64, 66, 74, 79, 80.

Plaintiffs allege that Gray distributed these misrepresentations through "investor meetings." SAC ¶ 54. These meetings took the varied forms of breakfast, lunch, and dinner meetings and occurred during "several occasions" during the summer of 2012. SAC ¶ 78.

On November 27, 2013, BELP investors learned that Everloop intended to enter a licensing agreement with a start-up company owned by an Everloop investor. SAC ¶ 90. BELP objected to Everloop's deal, and the parties agreed to resolve the dispute through mediation. *Id.* Goldberg and Amerio allege that the BELP investors still do not know the full terms of the mediated settlement. SAC ¶ 91.

Goldberg and Amerio nevertheless believe that the settlement was in the amount of $650,000, and that Gray misused $350,000 of the settlement by channeling the funds to another Archipel entity. SAC ¶ 92. In so doing, Gray allegedly required each BELP investor to sign a confidentiality release in order to receive any of the settlement payout. SAC ¶ 203.

This allowed Gray to falsely inform the investors that the settlement was for only $300,000, trusting to their confidentiality agreement to prevent them from uncovering the true value of the settlement. *Id.* Gray also allegedly misdirected funds from some Archipel entity investment vehicles to others and falsified documents to cover his commingling of funds. *See generally* SAC ¶¶ 102-31.

The investors eventually discovered Gray, Edwards, and the Archipel entities' misrepresentations.[2] SAC ¶ 89. In response, Goldberg filed a complaint in the Northern District of New York on April 30, 2015. Dkt. 1. He later amended that complaint on December 9, 2015. Dkt. 53. On December 22, 2017, Goldberg filed the second amended complaint, including Amerio as co-plaintiff. SAC. Plaintiffs bring twelve claims for relief:

1. All defendants' alleged violation of § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) ("§ 10(b)"); and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, through the misleading contents of the PPMs, and through their varied misrepresentations to secure Everloop investments. SAC ¶¶ 142-184.

2. Gray's additional liability for the same as a control person of the Archipel entities under § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a) ("§ 20(a)"). SAC ¶¶ 185-96.

3. Gray's alleged violation of 18 U.S.C. § 1962(a) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), which allows plaintiffs to bring a civil claim under 18 U.S.C. § 1964, for fraudulently appropriating $350,000 from the settlement with Everloop and distributing it to other Archipel funds. SAC ¶¶ 197-214.

---

[2] On February 27, 2015, the Security and Exchange Commission commenced an action against Gray and the Archipel entities in the Southern District of New York, enjoining further activity of the Archipel Entities and pursuing damages from both the Archipel entities and Gray. Additionally, Gray pled guilty to securities fraud in violation of § 10(b) of the Exchange Act and served two years' imprisonment. He has since been released.

4. All defendants' alleged fraud for their misrepresentations, including the PPMs and their statements concerning Everloop. SAC ¶¶ 215-22.

5. All defendants' negligent misrepresentations in providing the PPMs and the "other representative materials" that plaintiffs relied on in deciding to invest in Everloop, and failing to use reasonable diligence in verifying the accuracy of the same. SAC ¶¶ 223-29.

6. All defendants' breach of a fiduciary duty to plaintiffs for the entirety of their conduct. SAC ¶¶ 230-38.

7. Conversion against Gray for exercising unlawful dominion and control over plaintiffs' investment funds. SAC ¶¶ 239-46.

8. Gray's alleged unjust enrichment in receiving plaintiffs' property as a result of the scheme. SAC ¶¶ 247-51.

9-12. Four different counts of violations of New York Debtor and Creditor Law for fraud and presumptive fraud. SAC ¶¶ 252-67.

Goldberg and Amerio's motion for class certification is considered on the parties' submissions without oral argument.

## III.  **LEGAL STANDARD**

"A class may be certified only if 'after a rigorous analysis,' the district court is satisfied that the prerequisites of Rule 23(a) . . . are met." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)). Class certification is the exception, not the rule, so the party moving for class certification "must affirmatively demonstrate . . . compliance with" Rule 23. *Wal-Mart Stores, Inc. v.* Dukes, 564 U.S. 338, 350 (2011). The party moving for class certification bears the burden of proving by a preponderance of the evidence that a class action is the proper method of proceeding.

*Teamsters Local 445 Freight Div. Pension, Fund v. Bombardier Inc.*, 546 F.3d 196, 202-03 (2d Cir. 2008).

The court must then "'probe behind the pleadings before coming to rest on the certification question,' satisfying itself that Rule 23 compliance may be demonstrated through 'evidentiary proof.'" *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 138 (2d Cir. 2015) (citing *Comcast*, 569 U.S. at 33). "Such an analysis will frequently entail overlap with the merits of the plaintiff's underlying claim . . . because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Comcast*, 569 U.S. at 33-34.

In carrying their burden, plaintiffs must first demonstrate that their class action possesses four features: "(1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation." *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 222 (2d Cir. 2008), *abrogated on other grounds by Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639 (2008). If so, plaintiffs must then establish that "the class can be maintained under any one of the three subdivisions of Rule 23(b)." *McLaughlin*, 522 F.3d at 222.

Lastly, the Second Circuit has noted that a purported class must "be defined using objective criteria that establish a membership with definite boundaries," under what courts refer to as the "ascertainability doctrine." *In re Petrobas Sec.*, 862 F.3d 250, 264 (2d Cir. 2017) *cert. granted*, (U.S. Nov. 3, 2017) (No. 17-664).

## IV.    **DISCUSSION**

### A.  **Rule 23(b)(3)'s predominance requirement.**

Goldberg and Amerio rely exclusively on Rule 23(b)(3) as the appropriate form for their proposed class. Similarly, defendants invest a vast majority of their opposition disputing that plaintiffs' claim meets the criteria of Rule 23(b)(3).

Rule 23(b)(3) allows for class certification so long as "the questions of law or fact common to class members predominate over any questions affecting only individual members." Courts have separated this into two distinct elements of predominance and superiority. *See Gregory v. Stewart's Shops Corp.*, 2016 WL 8290648, at *10 (N.D.N.Y. July 8, 2016). Plaintiffs have satisfactorily proven predominance if: "(1) resolution of any material legal or factual questions . . . can be achieved through generalized proof, and (2) these [common] issues are more substantial than the issues subject only to individualized proof." *In re Petrobras*, 862 F.3d at 270 (alterations in original) (internal citations and quotation marks omitted).

The purpose of this rule is to limit class certification to cases where "it would achieve economies of time, effort and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Mazzei v. Money Store*, 829 F.3d 260, 272 (2d Cir. 2016). "Considering whether questions of law or fact common to class members predominate begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) (internal citations and quotation marks omitted).

1. **Plaintiffs' securities fraud claims.**

The elements of a private securities fraud claim under § 10(b) are: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011). In order to establish a prima facie case of control person liability under § 20(a), the plaintiff must show: (1) a primary violation—such as a § 10(b) violation—by a controlled entity; (2) control of the primary violator by the defendant;

9

and (3) that the controlling person was in some meaningful sense a culpable participant in the primary violation. *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998).

"Whether common questions of law or fact predominate in a securities fraud action often turns on the element of reliance." *Halliburton*, 563 U.S. at 810. This is because "[t]he traditional way a plaintiff can demonstrate reliance is by showing that he was [individually] aware of a company's statement and engaged in a relevant transaction . . . based on that specific misrepresentation." *Id.* This individualized proof typically "overwhelm[s] the common" issues, and defeats class certification. *Basic Inc. v. Levinson*, 485 U.S. 224, 242 (1988).

As a result, a plaintiff seeking class certification under Rule 23(b)(3) must demonstrate a method of proving reliance that is common among the class. *See In re IPO Secs. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006) (noting that plaintiffs relied on the presumption of reliance established in *Basic*, 485 U.S. at 245-47 to try to establish reliance using classwide proof). The Supreme Court has therefore established, however, that "securities fraud plaintiffs can in certain circumstances satisfy the reliance element of a Rule 10b-5 action by invoking a rebuttable presumption of reliance, rather than proving direct reliance on a misrepresentation." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 268 (2014).

One such presumption—and the one that plaintiffs rely on—is the presumption created in *Affiliated Ute Citizens of Utah v. United States*. 406 U.S. 128 (1972). In that case, the Supreme Court held that in cases where plaintiffs allege fraud based on defendants' omissions of material facts despite having a duty to disclose them, "positive proof of reliance is not a prerequisite to recovery." *Id.* at 153.

However, the Second Circuit has cautioned that it "is important . . . to understand the rationale for a presumption of causation in fact in cases like *Affiliated Ute*, in which no

positive statements exist:  reliance as a practical matter is impossible to prove" because plaintiffs cannot furnish evidence that they relied on something they did not know.  *Waggoner v. Barclays PLC*, 875 F.3d 79, 95 (2d Cir. 2017).  As a result, where plaintiffs' claims hinge more on affirmative misrepresentations, and are not "primarily" based on omissions, the *Affiliated Ute* presumption does not apply.  *See Starr ex rel. Estate of Sampson v. Georgeson Shareholder, Inc.*, 412 F.3d 103, 109 n.5 (2d Cir. 2005).

Additionally, the Second Circuit in *Waggoner* further clarified the limited scope of the *Affiliated Ute* presumption.  875 F.3d 79.  In particular, the Second Circuit clarified that "[t]he *Affiliated Ute* presumption does not apply . . . to misstatements whose only omission is the truth that the statement misrepresents."  *Id.* at 96.  In other words, a plaintiff cannot use the *Affiliated Ute* presumption simply by arguing that a defendant's alleged outright lie also, by definition, concealed the truth.  *See id.*

Here, *Waggoner* controls, and Goldberg and Amerio cannot rely on the *Affiliated Ute* presumption for their alleged § 10(b) fraud.  875 F.3d 79.  In the first place, plaintiffs substantially misstate the complaint's balance between omission and affirmative misstatement.  *Id.* at 96.  Plaintiffs "focus their claims on . . . affirmative misstatements," not on defendants' omission of Gray's disciplinary history.  *Id.*; *see* SAC ¶¶ 42-46, 57-59, 64, 66, 74, 79, 80.

Among all of Goldberg and Amerio's claims of defendants' deceptions, the only claim that seems to present an omission is the failure among all defendants to inform plaintiffs that Gray had lost his license due to disciplinary issues.  SAC ¶ 49.  By contrast, plaintiffs present several alleged active misrepresentations, including Gray's varied allegations as to Everloop's backers, grants, and general financial condition, across several in-person meetings.  SAC ¶¶ 42-46, 57-59, 64, 66, 74, 79, 80.  The complaint speaks for itself on that

score.  Plaintiffs' arguments sound primarily in misrepres22entation, not omission, and on this basis alone plaintiffs cannot benefit from the *Affiliated Ute* presumption.

Even if Goldberg and Amerio's complaint did primarily present omission claims, however, the *Affiliated Ute* presumption would not apply.  Plaintiffs argue that *Waggoner* is inapplicable here, because defendants' collective omission of Gray's disciplinary history is not a "misstatement[] whose only omission is the truth that the statement misrepresents." *Waggoner*, 875 F.3d at 96.

Plaintiffs are wrong.  Gray, Edwards, and the Archipel entities provided their desired investors with biographies and fact sheets which included the affirmative, false statement that Gray's licenses were in good standing.  SAC ¶ 49.  Defendants' presentation of Gray's credentials by extension constituted "misleading statements that were not corrected," not a pure omission of a material fact.  *Waggoner*, 875 F.3d at 96 (internal citations and quotation marks omitted).

Of course defendants, in claiming that Gray's credentials were still in good standing, failed to inform their potential investors that they were not.  But that is true of any falsehood: a liar always omits the truth that he is lying.  Plaintiffs' interpretation of "omission" would therefore expand the *Affiliated Ute* presumption to any and every misstatement.  As a result, the sole omission that plaintiffs point to falls within *Waggoner*'s defined exemptions from the *Affiliated Ute* presumption, and therefore by the precedent of this Circuit cannot constitute an omission within the meaning of the *Affiliated Ute* presumption.  *Waggoner*, 875 F.3d at 96.

Goldberg and Amerio have thus failed to establish that the *Affiliated Ute* presumption applies in this case.  Neither have plaintiffs suggested any alternative means of generalized proof.  Generalized proof would be difficult in any case given the varied forms that the misrepresentations took through personal meetings between the purported class and Gray.

Accordingly, plaintiffs "cannot employ a classwide presumption of reliance under *Affiliated Ute*; nor, therefore, can [p]laintiffs satisfy the predominance requirement of Rule 23(b)(3)" regarding either of their securities fraud claims. *Levitt v. J.P. Morgan Sec., Inc.*, 710 F.3d 454, 470 (2d Cir. 2013).

Moreover, because plaintiffs must prove the § 10(b) violation to establish their § 20(a) claim, the same individual issue of reliance will also predominate over their § 20(a) claim. *See, e.g.*, *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 587 (S.D.N.Y. 2014) (ruling that because plaintiffs "failed adequately to plead [a primary] violation, . . . plaintiffs' claim for [§] 20(a) control person liability . . . also fails").

### 2. **Plaintiffs' RICO claims.**

Goldberg and Amerio rely on 18 U.S.C. § 1962(a) to support their civil suit under 18 U.S.C. § 1964. The elements of a civil RICO claim are: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *FD Prop. Holding, Inc. v. U.S. Traffic Corp.*, 206 F. Supp. 2d 362, 369 (E.D.N.Y. 2002). Racketeering activity includes numerous criminal violations, including mail and wire fraud under 18 U.S.C. §§ 1341 and 1343, respectively. 18 U.S.C. § 1961(1). A pattern of racketeering activity requires that the racketeering activities be both continuous and related. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

"The essential elements of [mail and wire fraud] are (1) a scheme to defraud[;] (2) money or property as the object of the scheme[;] and (3) use of the mails or wires to further the scheme." *United States v. Weaver*, 860 F.3d 90, 94 (2d Cir. 2017) (citing *United States v. Binday*, 804 F.3d 558, 569 (2d Cir. 2015)). A scheme to defraud requires that the defendant

13

have made material misrepresentations with fraudulent intent.  *Id.*  Critically, the Supreme Court has ruled that reliance is not an element of RICO mail and wire fraud.  *Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639, 658-59 (2008).

Goldberg and Amerio allege that the principal act of mail and wire fraud that constituted Gray's alleged pattern of racketeering activity is the release that he required the BELP partners to sign to receive the payout from the Everloop settlement.  SAC ¶ 203.

In this context, it is possible that Goldberg and Amerio can prove that Gray committed mail and wire fraud, and did so in a related and continuous pattern through the operation of an enterprise that affects interstate commerce.  Plaintiffs need not expressly prove reliance in the mail fraud context.  *Bridge*, 553 U.S. at 658-59.  In this case especially, because plaintiffs were not defrauded out of money in their actual possession, but instead deceived out of knowing that they were entitled to more money than they realized, it is unnecessary for plaintiffs to prove causation through reliance, at least from the facts now established. Accordingly, for plaintiffs' RICO claims, individual issues do not predominate, and plaintiffs could prove liability through classwide evidence.

### 3.  <u>Plaintiffs' fraud claims.</u>

Under New York Law, the plaintiff must prove five elements by clear and convincing evidence:  (1) a material misrepresentation or omission of fact; (2) made by defendant with knowledge of its falsity; (3) an intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff.  *See Crigger v. Fahnestock & Co., Inc.*, 443 F.3d 230, 234 (2d Cir. 2006).

Since Goldberg and Amerio will have to prove reliance to prove fraud, for the reasons discussed above it would be impracticable to manage that highly individualized proof in the

class setting.  Accordingly, for the same reasons, individual issues would predominate over common ones for plaintiffs' New York fraud claims.  *Levitt*, 710 F.3d at 470.

### 4. Plaintiffs' negligent misrepresentation claims.

To state a claim for negligent misrepresentation under New York law, the plaintiff must prove:  "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment."  *Hydro Inv'rs, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000).

Similarly, without a presumption of reliance in favor of the entire proposed class, the individual issues of reliance would predominate over the common issues involved in defendants' alleged misrepresentations.  Accordingly, for negligent misrepresentation plaintiffs could not establish that common issues predominate, and class certification would also be inappropriate for this claim.  *See Singleton v. Fifth Generation, Inc.*, 2017 WL 5001444, at *23 (N.D.N.Y. Sept. 27, 2017) (declining to grant class certification under Rule 23(b)(3) for intentional misrepresentation because plaintiffs would need to individually prove reliance, defeating predominance); *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 554 (E.D.N.Y. 2017) (noting in denying class certification that plaintiff's negligent misrepresentation claim "require[s] proof that he relied on" the misrepresentation).

### 5. Plaintiffs' claims for breach of fiduciary duty.

To state a claim for breach of fiduciary duties under New York law, a plaintiff must establish: "(1) the existence of a fiduciary relationship[;] (2) misconduct by the defendant[;]

and (3) damages directly caused by [the defendant's] misconduct." *Murphy v. Morlitz*, 751 F. App'x 28, 30 (2d Cir. 2018) (internal citations and quotation marks omitted) (summary order).

Goldberg and Amerio are capable of proving all elements through generalized proof. Each member of the purported class has the same relationship to Gray, Edwards, and the Archipel entities, that of a client to defendants' investment companies, so whether defendants owed a duty to plaintiffs is subject to generalized proof. The remaining elements of misconduct and causation hinge entirely on defendants' conduct, which plaintiffs could prove in a class setting. Although the Court notes that several of the alleged breaches that plaintiffs identify sound in fraud and misrepresentation, plaintiffs need not prove reliance for this claim. SAC ¶ 233. Accordingly, though individual issues of reliance may prove relevant, the common issues of duty and breach predominate in plaintiffs' claims for breach of fiduciary duty. *See, e.g.*, *Seekamp v. It's Huge, Inc.*, 2012 WL 860364, at *11 (N.D.N.Y. Mar. 13, 2012) (finding predominance requirement met for breach of fiduciary duty claim).

**6. <u>Plaintiffs' claims for conversion.</u>**

Plaintiffs prove conversion by establishing four elements: "(1) the party charged has acted without authorization[;] and (2) exercised dominion or a right of ownership over property belonging to another[;] (3) the rightful owner makes a demand for the property[;] and (4) the demand for return is refused." *Nelson v. Ulster Cty.*, 789 F. Supp. 2d 345, 357 (N.D.N.Y. 2010).

Goldberg and Amerio have alleged that the investors as a whole have made a demand for the return of the money allegedly owed from the settlement, allowing for class proof of this element. SAC ¶ 97.

Whether Gray acted without plaintiffs' authorization, and whether the purported class members have all made a demand for the return of the other funds provided to Everloop will

require individualized proof, but the predominant issue in this claim is whether Gray exercised dominion or a right of ownership over plaintiffs' property through his various alleged machinations and misappropriations.  SAC ¶ 242; *Nelson*, 789 F. Supp. 2d at 357. Accordingly, common issues, rather than individual ones, predominate regarding plaintiffs' conversion claim.  *Eldred v. Comforce Corp.*, 2010 WL 812698, at *19 (N.D.N.Y. Mar. 2, 2010) (allowing for class certification of conversion claims because although "these claims may entail individual issues of proof, the issues subject to generalized proof predominate[]").

### 7.  Plaintiffs' claims for unjust enrichment.

"Cases dealing with unjust enrichment in New York are uniform in their recognition of three elements of the claim:  . . . (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006).  "[C]laims of unjust enrichment will require individualized proof as to each plaintiff's situation and an individualized analysis of 'equity' and 'good conscience."  *Dungan v. Acad. at Ivy Ridge*, 249 F.R.D. 413, 427 (N.D.N.Y. 2008).

Regarding Goldberg and Amerio's unjust enrichment claims against Gray, the question of predominance is a close one, and turns on the third element of "equity and good conscience" requiring restitution.  *Beth Israel*, 448 F.3d at 586.  As *Dungan* suggests, this element is highly contentious and subject to individualized analysis.  *See* 249 F.R.D. at 427. Indeed, the Second Amended Complaint itself only serves to further complicate the issue.  To prove this element, plaintiffs rely on the "relationship" between the purported class and Gray—sounding in fiduciary duty and therefore subject to generalized proof—on the one hand, but on "reliance and inducement"—which as discussed above is a highly individualized

question—on the other.  SAC ¶ 250; *see Levitt*, 710 F.3d at 470 (denying class certification because plaintiffs could not prove reliance with generalized proof).

In total, Goldberg and Amerio's unjust enrichment claims function as an extension, or even a duplication, of their claims generally.  As such, for purposes of determining the predominance of common or individual issues as a whole, plaintiffs' unjust enrichment claims do not materially alter the analysis in either direction, because they simply restate the other causes of action.

### 8.  Plaintiffs' New York debtor and creditor law claims.

"Section 273 of the New York Debtor and Creditor Law provides that [e]very conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors . . . if the conveyance is made or the obligation is incurred without a fair consideration."  *United States v. Watts*, 786 F.3d 152, 164 (2d Cir. 2015) (internal quotation marks omitted) (citing N.Y. DEBT. & CRED. § 273).  A debtor's conveyance is therefore constructively fraudulent only if two elements are satisfied:  (1) it is made without fair consideration; and (2) the transferor is insolvent or will be rendered insolvent by the transfer in question.  *Watts*, 786 F.3d at 164.

Similarly, under § 274, plaintiffs must prove both a lack of fair consideration and that "the transferor is engaged in or is about to engage in a business transaction for which its remaining property constitutes unreasonably small capital[.]"  *Ehrlich for Hoffmans Trade Grp. LLC v. Commercial Factors of Atlanta*, 567 B.R. 684, 696 (N.D.N.Y. 2017).  Section 275 requires proof of a lack of fair consideration and that "the transferor believes that it will incur debt beyond its ability to pay[.]"  *Id.*

By contrast, "[t]o prove actual fraud under § 276, a creditor must show intent to defraud on the part of the transferor."  *In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005).

18

Plaintiffs need not prove inadequate consideration by the transferor, but they must prove "actual intent to hinder, delay, or defraud." *Id.*

Goldberg and Amerio have also met their burden of proving that common issues predominate in their claims under New York Debtor and Creditor Law. Each statute relied on above is subject to proof entirely based on defendants' conduct, with no need for individualized proof based on plaintiffs' conduct or reaction to that conduct. *Watts*, 786 F.3d at 164; *Sharp Int'l Corp.*, 403 F.3d at 56; *Ehrlich*, 567 B.R. at 696. Accordingly, common issues predominate for these claims.

### 9. <u>Whether plaintiffs' remaining claims and issues predominate over the reliance issue.</u>

The critical question facing the Court is whether Goldberg and Amerio have sufficiently made their case for class certification despite the looming, highly individualized issue of proving reliance. In the end, they have not. Individual, rather than common, issues predominate.

The absolute core of Goldberg and Amerio's complaint is fraud. Without the § 10(b) fraud, Gray controlled no violations to sustain his alleged § 20(a) fraud. *In re Lululemon*, 14 F. Supp. 3d at 587 (ruling that plaintiffs must prove a primary violation to prove control liability). The same statements that plaintiffs claim to have relied on which constitute defendants' frauds also support plaintiffs' allegations of negligent misrepresentation. *Compare* SAC ¶¶ 143-183 (establishing as basis of securities fraud defendants' misrepresentations concerning Everloop), *with* SAC ¶¶ 225-229 (realleging the Everloop misrepresentations). The same is true of plaintiffs' claim for breach of fiduciary duty, which, with the exception of an included allegation of a breach through conflicts of interest, sounds in much the same language of fraud and misrepresentation. SAC ¶ 234.

As a result, there is no claim against all defendants which is not inextricably tied to the fraud claim. Granted, plaintiffs' claims against Gray under § 1964 and for common law conversion are somewhat more remote, tied as they are to Gray's specific alleged misappropriation of funds. SAC ¶¶ 203-05, 242. Similarly, plaintiffs' claims under N.Y. DEBT. & CRED. §§ 273-76 against Gray deal with a separate and distinct issue of Gray's fraudulent accumulation of debt. SAC ¶¶ 252-67.

However, none of these issues predominate nearly so much as do the fraud claims, and by extension reliance. It would achieve no economy of time, effort or expense to proceed with a litany of lesser issues in a class setting, ignoring the reliance issue as it broods overhead. *Mazzei*, 829 F.3d at 272. This is especially true since Gray alone is a party to Goldberg and Amerio's ancillary claims, but Edwards, BIM and Archipel would join to contest the individual issue of reliance and the alleged breach of fiduciary duty. *Id.* It is all too easy to imagine the class splintering into plaintiff-by-plaintiff proof of reliance only to become mired in that single issue.

Furthermore, certifying Goldberg and Amerio's class would require procedural fairness as a sacrifice. *Mazzei*, 829 F.3d at 272. A majority of plaintiffs' claims are against only Gray, while those against the remaining defendants are all tied to the fraud and therefore subject to the requirements of individualized proof of reliance. Granted, plaintiffs may prove that the remaining defendants breached a fiduciary duty without expressly proving reliance, but even there, much of plaintiffs' claims center on the same issues of fraud and misrepresentation. SAC ¶ 234. As a result, all defendants except for Gray would be attached to a class action suit that is largely irrelevant to their interests, and whose most crucial issue would not be served in the slightest by class certification.

In summary, Amerio and Goldberg's claims are predominantly fraud claims, and therefore individual issues of reliance predominate. Plaintiffs have therefore failed to meet their burden under Rule 23(b)(3), and class certification is inappropriate. *See, e.g.*, *Levitt*, 710 F.3d at 470 (ruling that inability to submit theory of common proof for reliance precluded plaintiffs from satisfying predominance requirement); *Dungan*, 249 F.R.D. at 415-17 (ruling that multiple claim complaint is "predominantly a fraud case" and thus finding that class certification is not warranted).

## V.    **CONCLUSION**

Plaintiffs Goldberg and Amerio have failed to meet their burden of proving that their causes of action could be properly brought as a class action. The primary concern in determining whether to grant a class action certification is whether the class action mechanism is a fair and efficient mechanism of resolving the claims. In this case, it is neither. Accordingly, plaintiffs' motion for class certification must be denied.

Therefore, it is ORDERED that plaintiffs' motion for class certification is DENIED.

It is SO ORDERED.

David N. Hurd
U.S. District Judge

Dated:  September  3, 2019
        Utica, New York.